1  Desmond J. Hinds, Esq. (SBN: 105831)
       dhinds@hinshawlaw.com
2  Gary E. Devlin, Esq. (SBN: 210517)
       dhunter@hinshawlaw.com
3  HINSHAW & CULBERTSON LLP
   11601 Wilshire Blvd., Suite 800
4  Los Angeles, CA 90025
   Telephone:    310-909-8000
5  Facsimile:    310-909-8001

**FILED**

OCT 1 2009

CLERK
United States Bankruptcy Court
San Jose, California

6  **Attorneys for Defendants**
   SAXON MORTGAGE SERVICES INC.;
7  DEUTSCHE BANK NATIONAL TRUST
   COMPANY AS TRUSTEE FOR
8  MORGAN STANLEY, MSAC 2007-NC3

9           **UNITED STATES BANKRUPTCY COURT**

10          **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SAN JOSE DIVISION**

12

13  In Re

14  RICHARD SOUZA CAPORALE
    and ISABEL SOUZA CAPORALE,

15          Debtors.

16

17  RICHARD SOUZA CAPORALE
    and ISABEL SOUZA CAPORALE,

18          Plaintiffs,

19  vs.

20  SAXON MORTGAGE SERVICES
    INC., DEUTSCHE BANK
21  NATIONAL TRUST COMPANY AS
    TRUSTEE FOR MORGAN
22  STANLEY, MSAC 2007-NC3;
    AND DOES 1-10,
23
            Defendants.
24

**Adversary Case No. 09-05050**

(Related Chapter 7 Case No. 07-54109)

Assigned to Judge Arthur S. Weissbrodt

**REPLY BRIEF OF DEFENDANTS IN
SUPPORT OF SUPPLEMENTAL BRIEF
SUBMITTED IN OPPOSITION TO
APPLICATION FOR RESTRAINING
ORDER; DECLARATION OF GARY E.
DEVLIN IN SUPPORT THEREOF**

[Filed Concurrently with Declaration of Melissa
Johnson]

Date:        October 9, 2009
Time:        2:15 p.m.
Courtroom:   3020

25     Defendants SAXON MORTGAGE SERVICES INC. and DEUTSCHE BANK NATIONAL

26  TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY, MSAC 2007-NC3 (hereinafter

27  "Defendants") submit their Reply brief in support of its Second Supplemental Brief in Opposition to

28

                                    1

DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF          3115031v1 898356 68313
IN OPPOSITION TO APPLICATION FOR RESTRAINING ORDER

Case: 09-05050    Doc# 35    Filed: 10/01/09    Entered: 10/07/09 15:14:45    Page 1 of 24

As of the present date, Defendants are still trying to locate copies of all documents evidencing the foregoing transactions.

If this Court holds Defendants' possession of the original promissory note is not sufficient, Defendants request, in the alternative, that this hearing be continued such that Defendants can continue its diligent efforts to locate the appropriate documents evidencing each of the above transactions.

**IV.** **CONCLUSION**.

As set forth above, Plaintiffs are not entitled to an injunction in this case. The temporary injunction currently in force must be lifted. However, if the Court determines that possession of the original promissory note is not sufficient, this hearing should be continued such that Defendants can continue its efforts to locate all appropriate documents evidencing the appropriate transfer of the note to its possession.

Dated: October 1, 2009

HINSHAW & CULBERTSON LLP

By: _____
Desmond J. Hinds
Gary E. Devlin
Attorneys for Defendants
**SAXON MORTGAGE SERVICES INC.;**
**DEUTSCHE BANK NATIONAL TRUST**
**COMPANY AS TRUSTEE FOR MORGAN**
**STANLEY, MSAC 2007-NC3**

# MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

This is a Mortgage Loan Purchase and Interim Servicing Agreement ("Agreement"), dated as of April 20th, 2007, by and between Natixis Real Estate Capital Inc., a New York corporation, having an office at 9 West 57th Street, New York, New York 10019 (the "Seller") and the Person whose name and address is shown on the signature page of this Agreement (the "Purchaser").

WHEREAS, the Seller desires to sell to the Purchaser, and the Purchaser desires to purchase from the Seller, certain residential mortgage loans as whole loans (collectively, the "Mortgage Loans") on a servicing-released basis as described herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument which created a lien on a residential property located in the jurisdiction indicated on the Mortgage Loan Schedule annexed hereto as Exhibit A; and

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance of the Mortgage Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

## SECTION 1.     DEFINITIONS.

The following terms are defined as follows:

Agreement:   This Mortgage Loan Purchase Agreement and Interim Servicing Agreement and all amendments hereof and supplements hereto.

Assignment of Mortgage:   An individual assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form and in blank, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the Purchaser.

Business Day:   Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions in (a) the State of New York or (b) the State in which Servicer's servicing operations are located, are authorized or obligated by law or executive order to be closed.

Closing Date:   On or about April 18, 2007.

Code:   The Internal Revenue Code of 1986, as amended, or any successor statute thereto.

-1-

Custodian: Deutsche Bank National Trust Company, a national banking company, and its successors in interest and permitted assigns, or any successor to the Custodian.

Cut-off Date: April 1, 2007.

Delinquent: A Mortgage Loan in which the Monthly Payment has not been received on or prior to the Due Date occurring in the immediately succeeding month (i.e. if Monthly Payment due on February 1 is not received on or prior to March 1, such Mortgage Loan would be Delinquent).

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

Escrow Payments: The amounts constituting ground rents, taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums and other payments required to be escrowed by the Mortgagor with the Mortgagee pursuant to any Mortgage Loan.

Liens: As defined in Section 5(a) of this Agreement.

Material Breach: As defined in Section 5(c) of this Agreement.

Mortgage: The mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a lien on real property securing the Mortgage Note.

Mortgage File: The Mortgage Loan Documents pertaining to a particular Mortgage Loan.

Mortgage Loan: An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the Mortgage Loan Schedule.

Mortgage Loan Documents: The documents pertaining to each Mortgage Loan listed on Exhibit B annexed hereto, excluding any documents identified as unavailable on the exception report to be provided to the Purchaser by the Custodian prior to the Closing Date.

Mortgage Loan Schedule: A schedule of Mortgage Loans annexed hereto as Exhibit A. The data set forth in the Mortgage Loan Schedule was provided to the Seller by New Century, and the Seller does not make any representation or warranty concerning the completeness or accuracy thereof.

Mortgage Note: The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property: The real property securing repayment of the debt evidenced by a Mortgage Note.

Mortgagor: The obligor on a Mortgage Note.

-2-

Case: 09-05050    Doc# 58    Filed: 10/01/09    Entered: 10/02/09 13:44:57    Page 5 of 24

7

New Century:  Collectively, NC Capital Corporation, New Century Mortgage Corporation, Home123 Corporation, New Century Credit Corporation and their affiliates.

Person:  Any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, limited liability company, government or any agency or political subdivision thereof.

Plan:  As defined in Section 6(m) of this Agreement.

Purchase Price:  The price paid on the Closing Date by the Purchaser to the Seller in exchange for the Mortgage Loans as calculated in Section 3 of this Agreement.

Purchase Price Percentage: 95.048269%.

Purchaser: The Person whose name and address is shown on the signature page hereof, and its successors in interest.

Repurchase Price:  The Purchase Price Percentage multiplied by the unpaid principal balance of the applicable Mortgage Loan(s) as of the date of repurchase, plus accrued and unpaid interest from the last paid through date to but not including the date of repurchase, except that for those Mortgage Loans identified on the Mortgage Loan Schedule as being more than 30 days' Delinquent, the Repurchase Price shall include the lesser of (a) up to 59 days of accrued and unpaid interest and (b) the number of days of accrued interest paid by the Purchaser on the Closing Date.

RESPA:  The Real Estate Settlement Procedures Act, as amended from time to time.

Securities Act:  The Securities Act of 1933, as amended.

Seller:  Natixis Real Estate Capital Inc., a New York corporation, and its successors in interest.

Servicer:  Saxon Mortgage Services, Inc., a Texas corporation, and its successors in interest.

Servicing Addendum:  The servicing addendum substantially in the form annexed hereto as Exhibit C, dated as of the Cut-off Date, by and between the Purchaser and the Servicer, pursuant to which the Servicer will interim service the Mortgage Loans.

Servicing Transfer Date:  A date mutually agreed by the Seller, the Purchaser and the Servicer, which in any event will be no later than June 1, 2007.

Case: 09-05050    Doc# 58    Filed: 10/01/09    Entered: 10/02/09 13:44:57    Page 6 of 24

## SECTION 2.  CONVEYANCE FROM SELLER TO PURCHASER.

(a)  Conveyance of Mortgage Loans; Possession of Mortgage Files.

The Seller, simultaneously with the execution and delivery of this Agreement, does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement, all right, title and interest of the Seller in and to the Mortgage Loans.

The Purchaser, simultaneously with the execution and delivery of this Agreement, does hereby assume for the benefit of the Seller all of the right, title, interest, and obligations of the Seller arising from and after the Closing Date, in and to the Mortgage Loans.

All rights arising out of the Mortgage Loans including all funds received by the Seller after the Cut-off Date on or in connection with a Mortgage Loan shall be vested in the Purchaser.

The sale of each Mortgage Loan shall be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller.

(b)  Possession of Mortgage Loan Documents.

The Mortgage Loan Documents for each Mortgage Loan are in the possession of the Custodian on behalf of the Seller. After the Seller receives the Purchase Price in accordance with Section 3 hereof, the Seller shall notify the Custodian of the sale of the Mortgage Loans from the Seller to the Purchaser and shall authorize the Custodian to release the Seller's interest in the Mortgage Loan Documents for each Mortgage Loan to the Purchaser. The Purchaser shall then direct the Custodian to deliver such Mortgage Loan Documents to the Purchaser or its designee or shall enter into a custodial agreement or similar agreement with the Custodian with respect to the Mortgage Loans.

## SECTION 3.  PURCHASE PRICE.

(a)  The Purchase Price shall be the Purchase Price Percentage multiplied by the aggregate unpaid principal balance of the Mortgage Loans as of the Cut-off Date plus all accrued and unpaid interest from the last paid through date to but not including the Closing Date. The Purchase shall not be required to reimburse the Seller for any outstanding servicing advances and will not be entitled to hold back any portion of the Purchase Price on the Closing Date.

(b)  The Purchase Price shall be paid to the Seller on the Closing Date by wire transfer of immediately available federal funds.

(c)  The Purchaser shall be entitled to (1) all principal payments received after the Cut-off Date, (2) all other recoveries of principal collected on or after the Cut-off Date, and (3) all payments of interest on the Mortgage Loans received after the Cut-off Date.

-4-

Case: 09-05050   Doc# 58   Filed: 10/01/09   Entered: 10/02/09 13:44:57   Page 7 of 24

(d)     If any party hereto receives a payment or collection on or with respect to any Mortgage Loan to which the other party is entitled, the receiving party shall promptly remit such payment to the other party.

## SECTION 4.     SERVICING OF THE MORTGAGE LOANS.

The Mortgage Loans are being sold by the Seller to the Purchaser on a servicing-released basis. From and after the Closing Date to the Servicing Transfer Date, the Servicer shall service the Mortgage Loans on behalf of the Purchaser on an "actual/actual" basis pursuant to the Servicing Addendum.

## SECTION 5.     REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF THE SELLER.

(a)     The Seller, as a condition to the consummation of the transactions contemplated hereby, hereby represents and warranties to the Purchaser that, as of the date hereof and as of the Closing Date (i) the Seller is a corporation validly existing and in good standing under the laws of the State of New York; (ii) the Seller has the power and authority to execute and deliver this Agreement and to perform its obligations hereunder; (iii) this Agreement has been duly and validly authorized, executed and delivered by the Seller; (iv) this Agreement is the valid and binding obligation of the Seller, enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, liquidation, fraudulent conveyance, reorganization, moratorium, receivership, conservatorship, or other similar laws affecting the enforcement of the rights of creditors generally, and general principles of equity including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity); and (v) the Seller has full right to transfer and assign each Mortgage Loan to the Purchaser free and clear of any encumbrance, lien, pledge, charge or security interest of the Seller or any of its affiliates (collectively, "Liens"), and following the transfer and assignment of each Mortgage Loan, the Purchaser will acquire such Mortgage Loan free and clear of any such Lien.

(b)     It is understood and agreed that the representations and warranties set forth in Section 5(a) above shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or the examination or failure to examine any Mortgage File, until the 181st day after the date of this Agreement, at which point such representations and warranties should terminate (notwithstanding anything to the contrary herein).

(c)     Upon discovery by either the Seller or the Purchaser of any breach of the representation and warranty set forth in clause (v) of Section 5(a) that materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser therein (a "Material Breach"), the party discovering such Material Breach shall give prompt written notice to the other.

Within 120 days of the earlier of either discovery by or notice to the Seller of any Material Breach, the Seller shall use its best efforts promptly to cure such Material Breach in all

-5-

material respects. In the event that such Material Breach cannot be cured within 120 days of the earlier of either discovery by or notice to the Seller of such breach, the affected Mortgage Loans shall, at the Purchaser's option, be repurchased by the Seller at the Repurchase Price; provided, however, that the Seller shall not be obligated to repurchase any Mortgage Loan pursuant to this Section 5(c) to the extent that the Purchaser has directly modified or altered such Mortgage Loan to materially and adversely affect the value of such Mortgage Loan; provided, further, that the Seller's obligation to repurchase such Mortgage Loan is limited to Material Breaches discovered on or prior to 120 days following the Closing Date. Any repurchase of a Mortgage Loan or Loans pursuant to the foregoing provisions of this Section 5(c) shall be accomplished by direct remittance of the Repurchase Price to the Purchaser or its designee in accordance with the Purchaser's instructions.

At the time of repurchase, the Purchaser and the Seller shall arrange for the reassignment of the applicable repurchased Mortgage Loan, servicing-released, to the Seller and the delivery to the Seller of the Mortgage Loan Documents and any other documents held by the Purchaser or its designee relating to the repurchased Mortgage Loan.

It is understood and agreed that the obligations of the Seller set forth in this Section 5(c) to cure or repurchase a defective Mortgage Loan as provided in this Section 5(c) constitute the sole remedies of the Purchaser respecting a Material Breach.

SECTION 6.    **REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF THE PURCHASER.**

The Purchaser represents and warrants to the Seller that as of the date hereof and as of the Closing Date:

(a)    The Purchaser is a substantial sophisticated investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Mortgage Loans and its bid and decision to purchase the Mortgage Loans are based upon its own independent expert evaluations of the Mortgage Loans and the Mortgage Files and other materials deemed relevant by the Purchaser and its agents. The Purchaser acknowledges and agrees to purchase the Mortgage Loans in their **"AS IS, WHERE IS" CONDITION "WITH ALL FAULTS"** as of the Closing Date. The Purchaser acknowledges that no agent, employee, consultant, advisor or representative of the Seller is authorized to make any representations or warranties regarding the transactions contemplated hereby, except as expressly set forth in this Agreement. The Purchaser is entering into this Agreement based solely upon such evaluations and inspections, and has not relied upon any oral or written information or any representations or warranties whatsoever from the Seller or any of its respective employees, affiliates, agents or representatives, other than the representations and warranties of the Seller expressly contained herein. WITHOUT LIMITATION OF THE FOREGOING, THE PURCHASER ACKNOWLEDGES THAT THE SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES EXCEPT AS EXPRESSLY CONTAINED IN THIS AGREEMENT, AS TO THE MORTGAGORS, MORTGAGE LOANS OR THE MORTGAGED PROPERTIES INCLUDING, WITHOUT LIMITATION, (i) THE FINANCIAL

CONDITION OF ANY MORTGAGOR, (ii) THE VALUE, COLLECTIBILITY, MARKETABILITY, CONDITION OR FUTURE PERFORMANCE OF ANY MORTGAGE LOAN, (iii) THE COMPLIANCE OR LACK OF COMPLIANCE OF ANY MORTGAGED PROPERTY WITH ANY LAWS, INCLUDING, WITHOUT LIMITATION, ENVIRONMENTAL AND LAND USE OR OCCUPANCY LAWS, (iv) THE PHYSICAL CONDITION OF ANY MORTGAGED PROPERTY OR ANY BUILDING, IMPROVEMENTS, MACHINERY, EQUIPMENT OR PERSONAL PROPERTY COMPRISING ALL OR A PORTION OF ANY MORTGAGED PROPERTY OR OTHERWISE, (v) COLLECTIBILITY OF ANY MORTGAGE LOAN; OR (vi) THE ENFORCEABILITY, VALIDITY, EXISTENCE, PRIORITY OR PERFECTION OF LIENS (IF ANY) SECURING ANY MORTGAGE LOAN;

(b)     The Purchaser has been able to conduct such due diligence, investigations, inspections, review and analysis of the Mortgage Loans and the Mortgage Files and related information furnished by the Seller as the Purchaser deemed necessary, proper or appropriate with respect to the purchase and acquisition of the Mortgage Loans and has elected to purchase the Mortgage Loans based solely on such due diligence, investigations, inspections, review and analysis;

(c)     The Purchaser has the financial wherewithal to own the Mortgage Loans for an indefinite period of time and to bear the economic risk of an outright purchase of the Mortgage Loans and a total loss of the Purchase Price for the Mortgage Loans;

(d)     The Purchaser is in full compliance with its obligations under the terms of the Confidentiality Agreement dated March 27th, 2007 and executed by the Purchaser to review the information made available by the Seller to all potential buyers of the Mortgage Loans, and the Purchaser acknowledges that any such agreement is not superseded or abrogated by this Agreement, including, without limitation, as to (i) any liability incurred by the Purchaser for any non-compliance prior to the date of this Agreement or (ii) any Mortgage Loans reviewed by the Purchaser but not acquired by the Purchaser. The information provided by the Purchaser or any affiliate of the Purchaser to the Seller in connection with the Purchaser's or such affiliate's qualifications as bidder, was true and correct on the dates provided and did not omit any information necessary to render complete and accurate the information provided, and such information is accurate and complete on the date hereof, except as the Purchaser has otherwise disclosed in writing to the Seller;

(e)     The Purchaser has not filed any petition seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law relating to bankruptcy or insolvency, nor has any such petition been filed against the Purchaser. No general assignment of the Purchaser's property has been made for the benefit of creditors, and no receiver, master, liquidator or trustee has been appointed for the Purchaser or any of its property. The Purchaser is not insolvent and the consummation of the transactions contemplated by this Agreement shall not render the Purchaser insolvent. The Purchaser will have as of the Closing Date sufficient capital or net worth to meet its obligations. The Purchaser certifies that any financial statements and any financial statements of any affiliate of the

Purchaser submitted to the Seller have been prepared in accordance with generally accepted accounting principles recognized by the American Institute of Certified Public Accountants or the Financial Accounting Standards Board, or any successors thereto, and are true and correct and that no circumstances have occurred or come to its attention since the date of such financial statements which would have a material adverse impact on the financial condition of the Purchaser or such affiliate as indicated on any such financial statements delivered to the Seller;

(f)     The Purchaser is validly existing and in good standing under the laws of its jurisdiction of incorporation or formation;

(g)     The Purchaser has the full power and authority to execute and deliver this Agreement and to perform its obligations hereunder;

(h)     The execution, delivery and performance of this Agreement by the Purchaser and the consummation by the Purchaser of the transactions contemplated hereby have been duly and validly authorized;

(i)     This Agreement is the valid and binding obligation of the Purchaser, enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, liquidation, fraudulent conveyance, reorganization, moratorium, receivership or other similar laws affecting the enforcement of the rights of creditors generally, and general principles of equity including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity);

(j)     The Purchaser understands that the Mortgage Loans have not been registered under the Securities Act or the securities laws of any state;

(k)     The Purchaser is acquiring the Mortgage Loans for investment for its own account only and not for any other Person;

(l)     Neither the Purchaser nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security to, or solicited any offer to buy or accepted a transfer, pledge or other disposition of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security from, or otherwise approached or negotiated with respect to the Mortgage Loans, any interest in the Mortgage Loans or any other similar security with, any person in any manner which would constitute a distribution of the Mortgage Loans under the Securities Act or which would render the disposition of the Mortgage Loans a violation of Section 5 of the Securities Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Mortgage Loans; and

(m)     Either (i) the Purchaser is not an employee benefit plan ("Plan") within the meaning of Section 3(3) of ERISA or a plan (also "Plan") within the meaning of Section 4975(e)(1) of the Code, and the Purchaser is not directly or indirectly purchasing the Mortgage Loans on behalf of, investment manager of, as named fiduciary of, as trustee of, or with assets of,

-8-

a Plan; or (ii) the Purchaser's purchase of the Mortgage Loans will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code.

### SECTION 7.   CLOSING.

The closing for the purchase and sale of the Mortgage Loans shall take place on the Closing Date. At the Seller's option, the Closing shall be either: by telephone, confirmed by letter or wire as the parties shall agree; or conducted in person, at such place as the parties shall agree.

### SECTION 8.   COSTS.

(a)   The Purchaser shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys and custodial fees. The out-of-pocket costs and expenses incurred in connection with the transfer of the Mortgage Loans (other than expenses incurred or payable by the Purchaser) and the Seller's attorney's fees, shall be paid by the Seller. The Seller shall prepare an Assignment of Mortgage in blank for each Mortgage Loan. The Purchaser shall prepare and pay the recording fees associated with any recordation of a Mortgage Loan.

(b)   The Seller shall be responsible for paying any and all fees and expenses due to the Custodian until such time as the Custodian shall cease to hold the Mortgage Loans for Seller.

### SECTION 9.   NOTICES.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

(i)   if to the Seller:

Natixis Real Estate Capital Inc.
9 West 57th Street, 36th Floor
New York, New York 10019
Attention: Al Zakes
Fax: 212-891-6193
Email: albert.zakes@cm.natixis.com

Case: 09-05050   Doc# 58   Filed: 10/01/09   Entered: 10/02/09 13:44:57   Page 12 of 24

with a copy to:

Natixis Real Estate Capital Inc.
9 West 57th Street, 36th Floor
New York, New York 10019
Attention: Christopher Connelly
Fax: 212-891-5859
Email: christopher.connelly@cm.natixis.com

(ii)     if to the Purchaser, at the address indicated on the signature page hereof,

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

## SECTION 10.     SEVERABILITY CLAUSE.

Any part, provision representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

## SECTION 11.     COUNTERPARTS.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

## SECTION 12.     GOVERNING LAW JURISDICTION; CONSENT TO SERVICE OF PROCESS.

THIS AGREEMENT SHALL BE DEEMED IN EFFECT WHEN A FULLY EXECUTED COUNTERPART THEREOF IS RECEIVED BY THE SELLER IN THE STATE OF NEW YORK AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS CHOICE OF LAW

-10-

RULES AND PRINCIPLES. EACH OF THE PURCHASER AND THE SELLER IRREVOCABLY (I) SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT; (II) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT; (III) AGREES THAT A FINAL JUDGMENT IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW; AND (IV) CONSENTS TO SERVICE OF PROCESS UPON IT BY MAILING A COPY THEREOF BY CERTIFIED MAIL ADDRESSED TO IT AS PROVIDED FOR NOTICES HEREUNDER.

### SECTION 13.     FURTHER AGREEMENTS.

The Purchaser and the Seller each agree to execute and deliver to the other such additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

### SECTION 14.     SUCCESSORS AND ASSIGNS; ASSIGNMENT OF PURCHASE AGREEMENT.

This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and the Purchaser and the respective successors and assigns of the Seller and the Purchaser. This Agreement may be assigned, pledged or hypothecated by any party without the consent of the other party.

### SECTION 15.     WAIVERS; OTHER AGREEMENTS.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

### SECTION 16.     EXHIBITS.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

### SECTION 17.     GENERAL INTERPRETIVE PRINCIPLES.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)     the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

-11-

16

(b)　accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)　references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)　reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)　the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)　the terms "include" and "including" shall mean without limitation by reason of enumeration.

**SECTION 18.**　**WAIVER OF TRIAL BY JURY.**

THE SELLER AND THE PURCHASER EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**SECTION 19.**　**PRIVACY ACT COMPLIANCE.**

The Seller and the Purchaser shall maintain policies, procedures, and safeguards designed to protect the security and confidentiality of any non-public personal information relating to Mortgagors. The Seller and the Purchaser agree to comply with the provisions of the Gramm-Leach-Bliley Act of 1999, as the same may be amended from time to time, and all implementing rules and regulations regarding consumer financial privacy, to the extent applicable to each of their actions and responsibilities hereunder.

[SIGNATURE PAGE FOLLOWS]

-12-

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

NATIXIS REAL ESTATE CAPITAL INC.

By: _____
Name:
Title:

By: _____
Name:
Title:

MORGAN STANLEY MORTGAGE CAPITAL INC.
(Type or Print Name of Purchaser)

By: _____
Name:
Title:

Jurisdiction of Organization or Formation of Purchaser: _____

Address of Purchaser: _____
_____
_____

Representative of Purchaser for Receipt of Notices: _____
_____
_____

18

# EXHIBIT A

## MORTGAGE LOAN SCHEDULE

A-1

*19*

# EXHIBIT B

## List of Mortgage Loan Documents

(a)     The original Mortgage Note bearing all intervening endorsements showing a complete chain of endorsements from the originator of such Mortgage Loan to the last endorsee (the "Last Endorsee"), endorsed by the Last Endorsee, without recourse in the following form: "Pay to the order of _____, without recourse" and signed in the name of the Last Endorsee by an authorized officer;

(b)     The original of the guarantee executed in connection with the Mortgage Note (if any);

(c)     The original Mortgage with evidence of recording indicated thereon;

(d)     An original Assignment of Mortgage, in suitable form for recordation in the jurisdiction in which the related Mortgaged Property is located, such assignment to be in blank and signed in the name of the Last Endorsee by an authorized officer;

(e)     The originals of all intervening assignments of the Mortgage (with evidence of recording thereon) showing a complete chain of assignments from the originator of such Mortgage Loan to the Last Endorsee;

(f)     The original policy of title insurance (or a commitment for title insurance, if the policy is being held by the title insurance company pending recordation of the Mortgage); and

(g)     The certificate of primary mortgage guaranty insurance, if any, issued with respect to such Mortgage Loan.

B-1

## EXHIBIT C

## SECTION 5.  SERVICING OF THE MORTGAGE LOANS.

Subsection 5.1  The Mortgage Loans are being sold by the Seller to the Purchaser on a servicing-released basis.

(a) From and after the Closing Date to the Servicing Transfer Date, the Seller shall cause the Mortgage Loans to be serviced for the Purchaser on an "actual/actual" basis by a servicer (the "Servicer"). The Servicer shall have full power and authority, acting alone, to do any and all things in connection with such servicing and administration which the Servicer may deem necessary or desirable, consistent with the terms of this Agreement and those mortgage servicing practices which are in accordance with accepted mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as the Mortgage Loans in the jurisdiction where each related Mortgaged Property is located. The parties hereto shall reasonably cooperate with each other to effect the transfer of servicing to the Purchaser or its designee;

(b) From the Closing Date to the Servicing Transfer Date, the Servicer shall be entitled to retain an amount equal to 0.25% per annum (the "Servicing Fee") computed on the basis of the outstanding principal balance of the related Mortgage Loan.  Such Servicing Fee shall be payable monthly and shall be pro rated for any portion of a month during which the Mortgage Loan is serviced by the Servicer.  The obligation of the Purchaser to pay the Servicing Fee is limited to, and the Servicing Fee is payable solely from, the interest portion (including recoveries with respect to interest from liquidation proceeds) of such monthly payment collected by the Servicer

(c) On each Remittance Date, the Servicer shall remit to the Purchaser, by wire transfer of immediately available funds to the account designated by the Purchaser, (A) all monthly payments received during the month immediately preceding the month in which the related Remittance Date occurs, plus (B) any payment or other recovery of principal on the Mortgage Loans which is received in advance of its scheduled due date, including any prepayment penalty or premium thereon and which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment, in any case, received in the prior calendar month. On the 5th calendar day of each month (or, if the 5th calendar day is not a business day, on the succeeding business day), the Servicer also shall provide to the Purchaser (or its assignees) a monthly remittance report with respect to collections through the related monthly cut off date, in hard copy and electronic format to be mutually agreed by the Servicer and the Purchaser (or the Purchaser's assignees);

(d) On or prior to the Servicing Transfer Date, the Servicer shall, at its sole cost and expense, take such steps as may be directed by the Purchaser, or its designee, in order to effectuate and evidence the transfer of the servicing of the Mortgage Loans (including, without

B-1

21

limitation, all related servicing files and escrow account balances) to the Purchaser or its designee;

(c) The Servicer shall forward by overnight mail on the date of receipt or by wire transfer on the next succeeding business day to the Purchaser, or its designee, any payments received by the Seller after the Servicing Transfer Date. The Servicer shall notify the Purchaser of the particulars of the payment, which notification requirement shall be satisfied if the Servicer forwards with its payment sufficient information to permit appropriate processing of the payment by the Purchaser;

(e) Neither the Servicer nor any of the officers, employees or agents of the Servicer shall be under any liability to the Purchaser for any action taken, or for refraining from taking any action, in good faith pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect the Servicer or any such person against the failure to perform its obligations in compliance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement. The Servicer and any officer, employee or agent of the Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. To the extent the Purchaser records with the recording office as permitted herein an Assignment of Mortgage which designates the Purchaser as the holder of record of the Mortgage, the Purchaser agrees that it shall (i) provide the Servicer with immediate notice of any action with respect to the Mortgage or the related Mortgaged Property and ensure that the proper department or person at the Servicer receives such notice; and (ii) immediately complete, sign and return to the Servicer any document reasonably requested by the Servicer to comply with its servicing obligations, including without limitation, any instrument required to release the Mortgage upon payment in full of the obligation or take any other action reasonably required by the Servicer. The Purchaser further agrees that the Servicer shall have no liability for (i) any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that the Servicer may sustain in any way related to servicing of the Mortgage Loans prior to the date hereof and (ii) the Purchaser's failure to comply with the subsections (a) or (b) in the foregoing sentence provided that with respect to the Purchaser's failure to comply with clause (b), the Servicer notifies the proper department or person at the Purchaser of any document or instrument request allowing the Purchaser a reasonable amount of time to comply with any such request. The Servicer shall have no liability to the Purchaser and shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its duties to service the Mortgage Loans in accordance with this Agreement and which in its opinion may involve it in any expenses or liability; provided, however, that the Servicer may, with the consent of the Purchaser, undertake any such action which it may deem necessary or desirable in respect to this Agreement and the rights and duties of the parties hereto. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities for which the Purchaser will be liable, and the Servicer shall be entitled to be reimbursed therefor from the Purchaser upon written demand.

B-2

Subsection 5.2 Servicing Transfer

(a) <u>Termination Procedures</u>. The Purchaser shall terminate this Agreement and transfer the servicing from the Servicer to any successor servicer with respect to any Mortgage Loan on such date (the "Servicing Transfer Date") as the Purchaser shall inform the Servicer by providing written notice to the Servicer at least fifteen (15) days prior to the Servicing Transfer Date of its intent to transfer the servicing of the Mortgage Loans from the Servicer on the Servicing Transfer Date; provided that, in any event, the Servicer shall be given timely notice to allow the Servicer to notify the related mortgagors of the transfer of servicing in accordance with the requirements of the RESPA and the Cranston Gonzalez National Affordable Housing Act of 1990, as amended. Notwithstanding the foregoing, the Servicing Transfer Date with respect to each such Mortgage Loan shall be no later than June 1, 2007. On or before the Servicing Transfer Date specified by the Purchaser in accordance with this paragraph (a) for the transfer of servicing from the Servicer, the Servicer shall prepare, execute and deliver to the successor entity designated by the Purchaser any and all documents and other instruments, and place in such successor's possession all Mortgage Loan Documents necessary or appropriate to effect the purposes of such notice of termination, including but not limited to the transfer and endorsement or assignment of the Mortgage Loans and related documents, at the Purchaser's sole expense. The Servicer shall cooperate fully with the Purchaser and such successor in effecting the termination of the Servicer's responsibilities and rights hereunder.

(b) <u>Transfer Procedures</u>. On or prior to the Servicing Transfer Date, the Servicer shall take such steps as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Mortgage Loans to the Purchaser, or its designee, including but not limited to the following:

(i) <u>Notice to Mortgagors</u>. The Servicer shall mail to the Mortgagor of each related Mortgage Loan a letter advising such Mortgagor of the transfer of the servicing of the related Mortgage Loan to the Purchaser, or its designee, in accordance with the Cranston Gonzales National Affordable Housing Act of 1990, as amended;

(ii) <u>Notice to Taxing Authorities and Insurance Companies</u>. The Servicer shall transmit to the applicable taxing authorities and insurance companies (including primary mortgage insurance policy insurers, if applicable) and/or agents, notification of the transfer of the servicing to the Purchaser, or its designee, and instructions to deliver all notices, tax bills and insurance statements, as the case may be, to the Purchaser from and after the Servicing Transfer Date.

(iii) <u>Delivery of Servicing Records</u>. The Servicer shall forward to the Purchaser, or its designee, all servicing records and the servicing file in the Servicer's possession relating to each related Mortgage Loan.

(iv) <u>Escrow Payments</u>. The Servicer shall provide the Purchaser, or its designee, with immediately available funds by wire transfer in the amount of the net Escrow Payments and suspense balances and all loss draft balances associated with the Mortgage

B-3

Loans. The Servicer shall provide the Purchaser with an accounting statement, in electronic format acceptable to the Purchaser, of Escrow Payments and suspense balances and loss draft balances sufficient to enable the Purchaser to reconcile the amount of such payment with the accounts of the Mortgage Loans. Additionally, the Servicer shall wire transfer to the Purchaser the amount of any agency, trustee or prepaid Mortgage Loan payments and all other similar amounts held by the Servicer.

(v) <u>Payoffs and Assumptions</u>. The Servicer shall provide to the Purchaser, or its designee, copies of all assumption and payoff statements generated by the Servicer on the related Mortgage Loans from the related Cut-off Date to the Servicing Transfer Date

(vi) <u>Mortgage Payments Received Prior to Servicing Transfer Date</u>.  Prior to the Servicing Transfer Date all payments received by the Servicer on each related Mortgage Loan shall be properly applied to the account of the particular Mortgagor

(vii) <u>Mortgage Payments Received after Servicing Transfer Date</u>. The amount of any related Monthly Payments received by the Servicer after the Servicing Transfer Date shall be forwarded to the Purchaser by overnight mail or by wire transfer within three Business Days following receipt thereof. The Servicer shall notify the Purchaser of the particulars of the payment, which notification requirement shall be satisfied if the Servicer forwards with its payment sufficient information to permit appropriate processing of the payment by the Purchaser

(viii) <u>Misapplied Payments</u>. Misapplied payments shall be processed as follows:

(A) All parties shall cooperate in correcting misapplication errors;

(B) The party receiving notice of a misapplied payment occurring prior to the Servicing Transfer Date and discovered after the Servicing Transfer Date shall immediately notify the other party;

(C) If a misapplied payment which occurred after the Cut-off Date but prior to the Servicing Transfer Date cannot be identified and said misapplied payment has resulted in a shortage in a custodial account or escrow account, the Servicer shall be liable for the amount of such shortage.  The Servicer shall reimburse the Purchaser for the amount of such shortage within thirty (30) days after receipt of written demand therefor from the Purchaser; (D) Any check issued hereunder shall be accompanied by a statement indicating the corresponding seller and/or the Purchaser Mortgage Loan identification number and an explanation of the allocation of any such payments

(ix) <u>Books and Records</u>. On the Servicing Transfer Date, the books, records and accounts of the Servicer with respect to the Mortgage Loans shall be in accordance with all applicable Purchaser requirements.

B-4

(x) <u>Reconciliation</u>. The Servicer shall, on or before the Servicing Transfer Date, reconcile principal balances and make any monetary adjustments required by the Purchaser. Any such monetary adjustments will be transferred between the Servicer and the Purchaser as appropriate.

(xi) <u>IRS Forms</u>. The Servicer shall file all IRS forms 1099, 1099A, 1098 or 1041 and K-1 which are required to be filed on or before the Servicing Transfer Date in relation to the servicing and ownership of the Mortgage Loans.

Except as otherwise provided in this Agreement, on the Servicing Transfer Date, Section 4(b) and Section 5 of this Agreement, except for Section 4(b)(vi), which shall survive the Servicing Transfer Date, shall terminate with respect to the Mortgage Loans.

(c) <u>Deboarding Fee</u>. With respect to each Mortgage Loan subject to the provisions of this Agreement, the Purchaser shall pay the Servicer a deboarding fee, if applicable, of twenty dollars ($20.00) per loan, within thirty (30) days following receipt of written notice from the Servicer that such Deboarding Fee is due.

B-5

25

1  PROOF OF SERVICE

2  *CAPORALE v. SAXON*

3  **USBC (San Jose) Case No. 07-54109 (Adv. Case No. 90-5050)**

4

5  I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025.

6

7  On October 1, 2009, I served the document entitled **REPLY BRIEF OF DEFENDANTS IN SUPPORT OF SUPPLEMENTAL BRIEF SUBMITTED IN OPPOSITION TO APPLICATION FOR RESTRAINING ORDER; DECLARATION OF GARY E. DEVLIN IN SUPPORT THEREOF** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

8

9

10  **Marc Voisenat**
**LAW OFFICE OF MARC VOISENAT**
**1330 Broadway, Suite 1035**
**Oakland, CA 94612**
**Tel: (510) 272-9710**
**Fax: (510) 272-9158**

11

12

13  ☐ **(BY MAIL):** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

14

15

16

17

18  ☐ **(BY FACSIMILE TRANSMISSION):** I caused a true copy thereof from sending facsimile machine telephone number 310-909-8001 to be sent via facsimile to the above listed names and facsimile numbers and received confirmed transmission reports indicating that this document was successfully transmitted to the parties named above.

19

20  ☒ **(VIA OVERNIGHT MAIL):** I deposited such envelope to be placed for collection and handling via UPS following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for UPS. On the same day that material is placed for collection, it is picked by UPS at Los Angeles, California.

21

22

23  ☐ **(BY ELECTRONIC MAIL):** By transmitting a true copy thereof to the electronic mail addresses as indicated below.

24  I declare under penalty of perjury under the laws of the United States that the above true and correct was executed on October 1, 2009, at Los Angeles, California.

25

26  *Robin Mojica*

27  ROBIN MOJICA

28

DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF
IN OPPOSITION TO APPLICATION FOR RESTRAINING ORDER