1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    (SAN JOSE DIVISION)

4

5  In re:

6  RICHARD SOUZA CAPORALE and          Case No. 07-54109-ASW
   ISABEL ANN CAPORALE,
7                                       Chapter 7

8                                       San Jose, California
                                        February 12, 2010
9                                       2:24 p.m.
            Debtors.
10  _____/

11  RICHARD and ISABEL CAPORALE,,

12          Plaintiffs,

13     v.                              A.P. No. 09-5050

14  SAXON MORTGAGES SERVICES, INC.
   et al.,
15
            Defendants.
16  _____/

17
                    TRANSCRIPT OF PROCEEDINGS
18          a) ORDER TO SHOW CAUSE RE PRELIMINARY
                        INJUNCTION ORDER
19     b) OPPOSITION BY SAXON MORTGAGES SERVICES, et al.

20
            BEFORE THE HONORABLE ARTHUR WEISSBRODT
21               UNITED STATES BANKRUPTCY JUDGE

22  APPEARANCES:

23  For the Plaintiffs/      LAW OFFICES OF MARC VOISENAT
   Debtors:                 BY: MARC VOISENAT, ESQ.
24                           1330 Broadway #1035
                            Oakland, California 94612
25

```
 1   APPEARANCES (CONTINUED):

 2
     For the Defendants:        LAW OFFICE OF HINSHAW AND
 3                              CULBERTSON
                                BY: DESMOND J. HINDS, ESQ.
 4                              11601 Wilshire Boulevard #800
                                Los Angeles, CA 90025
 5

 6   Court Recorder:            MONICA TARTAGLIA
                                UNITED STATES BANKRUPTCY COURT
 7                              280 South First Street
                                San Jose, California 95113
 8

 9
     Transcription Service:     Jo McCall
10                              Electronic Court
                                Recording/Transcribing
11                              2868 E. Clifton Court
                                Gilbert, Arizona 85295
12                              Telephone: (480) 361-3790

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

February 2, 2010                                    2:24 p.m

-oOo-

1       THE CLERK: All rise.

        THE COURT: Thank you ladies and gentlemen.
Please be seated.

        Okay.  <u>Caporale v. Saxon.</u>  If you'd take counsel
table please.  I need appearances, please.

        MR. VOISENAT: Good afternoon, Marc Voisenat for
the Plaintiffs.

        MR. HINDS: Good afternoon, Your Honor, Desmond
Hinds on behalf of Deutsche Bank and Saxon.

        THE COURT: Good afternoon, counsel.  There are
four links in the chain of the transfer of the subject
mortgage loan to the Defendants.  First, the originator of
the note and deed of trust, New Century Mortgage to
Natixis; second, Natixis to Morgan Stanley Mortgage
Capital, Inc., who's the purchaser; the purchaser to Morgan
Stanley ABS Capital I, Inc., whom I'll call Morgan Stanley;
and four, Morgan Stanley to Morgan Stanley ABS Capital I,
Inc. Trust 2007 NC-3, which I'll call the Morgan Stanley
Trust, for which Deutsche Bank National Trust Company is
the trustee and Saxon Mortgage Services, Inc. is the loan
servicer.

        Based on the Debtors' latest papers, it appears

1  that Debtors dispute Natixis' interest in Debtors' loan, so

2  the Court will focus on the first two links, first, New

3  Century Mortgage to Natixis.  New Century Mortgage

4  Corporation and Debtors entered into a promissory note

5  dated February 23rd, 2007.  Previously, as of November 10,

6  2006, New Century Mortgage Corporation, among others,

7  entered into a fifth amended and restated master repurchase

8  agreement, "The Repurchase Agreement," with Ixis Real

9  Estate Capital, Inc., "Ixis."

10          There's no direct statement in the record,

11  however.  Natixis North America, Inc., "Natixis," is listed

12  in Hatzoglou's declaration as being fka Ixis Real Estate

13  Capital, Inc.  So if the Debtors continue to context that

14  Ixis is not the predecessor in interest to Natixis, then

15  evidence, in the form of a supplemental declaration of John

16  Hatzoglou or some other competent witness, is required.

17          Assuming Ixis is now Natixis, according to the

18  Hatzoglou declaration, the repurchase agreement transferred

19  approximately 3,523 residential mortgage loans from the New

20  Century entities, including New Century Mortgage

21  Corporation, to Natixis.  Debtors assert that because

22  Debtors' loan with New Century Mortgage Corporation did not

23  exist on November 10, 2006, a fortiori, Debtors' loan could

24  not be covered by the repurchase agreement.  However, this

25  is inaccurate.  Under Section 1 of the repurchase

1   agreement, the repurchase agreement intends to cover future

2   transactions between the parties and does not relate solely

3   to mortgage loans in existence at the time the repurchase

4   agreement was entered into.

5         Specifically, Section 1 of the repurchase

6   agreement provides, and I quote:

7         "From time to time, the parties hereto may enter

8         into transactions, quote, 'the committed

9         transactions,' in which seller agrees to transfer

10        the buyer mortgage loans against the transfer of

11        funds by the buyer, with a simultaneous agreement

12        by the buyer to transfer to the seller such

13        mortgage loans at a date certain, no later than

14        364 days after the date of transfer, against the

15        transfer of funds by the seller.

16        "Additionally, from time to time, the buyer is

17        prepared to consider entering into additional

18        transactions, the uncommitted transactions, in

19        which the seller agrees to transfer to the buyer

20        mortgage loans against the transfer of funds by

21        the buyer, with a simultaneous agreement by the

22        buyer to transfer to the seller such mortgage

23        loans on demand by the buyer against the transfer

24        of funds by the seller.

25        "Each such committed transaction and uncommitted

1     transaction shall be referred to herein as a

2     transaction and shall be governed by this

3     agreement, unless otherwise agreed in writing."

4  (The Judge speaks to his Clerk.)

5        The Hatzoglou declaration states that Debtors'

6  loan is one of the loans purchased by Natixis under the

7  repurchase agreement.  However, there's still no evidence

8  of such a transfer, so if the Debtors still contest that

9  Debtors' loan was transferred by New Century Mortgage to

10 Natixis under the repurchase agreement, then evidence, in

11 the form of a supplemental declaration of John Hatzoglou or

12 another competent witness is required that includes any

13 appropriate documentation.

14       The fact that the repurchase agreement was

15 entered into by New Century Mortgage Company and Natixis

16 prior to Debtors' loan, by itself, however, is insufficient

17 to assert that Natixis did not purchase Debtors' loan under

18 the repurchase agreement.  It doesn't just positively prove

19 that.

20       Second, Natixis to Morgan Stanley Mortgage

21 Corporation, Inc.  The Debtors assert there's nothing in

22 the record showing that Debtors' loan was one of the

23 mortgage loans obtained by Natixis in relation to the

24 notice of default issued to New Century Mortgage on or

25 about March 8th, 2007.  The Debtors also assert that there's

1    nothing in the notice of disposition of mortgage loans

2    issued on or about March 27, 2007 that indicates that

3    Debtors' loan was included in the loans auctioned by

4    Natixis on April 11, 2007.

5           Again, if the Debtors still contest that Debtors'

6    loan was transferred by New Century Mortgage to Natixis

7    under the repurchase agreement –- and I think that's –-

8    then evidence in the form of a supplemental declaration of

9    John Hatzoglou or some other competent witness is required

10   that includes any appropriate documentation.  Debtors also

11   contend that any auction of the transferred loans conducted

12   on April 11, 2007 was conducted in violation of the

13   automatic stay in New Century Mortgage Corporation's

14   bankruptcy case filed in Delaware on April 2nd, 2007.

15          However, this doesn't appear to be the case for

16   two reasons.  First, under Section 7(b)(9) of the

17   repurchase agreement, the transactions were intended to be

18   sales and title to the purchase loans transferred to

19   Natixis and Natixis had free and unrestricted use of the

20   purchase loans.

21          Second, under Section 25(b) of the repurchase

22   agreement, either party's right to liquidate the

23   repurchased loans delivered in connection with the

24   transactions under the repurchase agreement is a right of

25   liquidation under Bankruptcy Code Section 559.  Bankruptcy

1  Code Section 559 provides that there is no stay of the
2  contractual right of a repurchase agreement participant to
3  liquidate under a repurchase agreement.  I'm not going to
4  quote all of that, but it starts with the words "The
5  exercise of contractual right..." and goes through "or by
6  reason of normal business practice."  Bankruptcy Code
7  Section 101(46) and 101(47) defines a repo participant and
8  a repurchase agreement, and I'm not going to read that
9  either.  But the decision incorporates that down through
10  (b) with the words, "... in a commercial mortgage loan."
11        So based on Bankruptcy Code Sections 559,
12  101(46), and 101(47), it appears that there is no stay with
13  respect to Natixis' ability to liquidate the mortgage loans
14  under the repurchase agreement post-petition.  And so the
15  Court is of the view that this part of Debtors' objection
16  is a non-issue.
17        So that's where we are, gentlemen.  What do you
18  want to do?
19        MR. HINDS: Well, Your Honor --
20        THE COURT: Let me just tell you, I have a
21  conundrum, an analytic conundrum that I've had in the
22  relief from stay context too, and I haven't figured the
23  answer out.  Maybe other judges have.  In these situations,
24  if the Debtor is paying, that's fine.  If the Debtor isn't
25  paying but is putting money in an escrow account, that's

1  fine.  But in the situations where the Debtor isn't doing
2  anything; they're not paying; they're not putting the money
3  in an escrow account; there's no equity in the property, I
4  really struggled with the concept of what the Court should
5  do, because on the one hand, the creditor isn't being
6  protected.  On the other hand, if I order the Debtor to put
7  the monies in escrow and the Debtor doesn't do it, does it
8  make any sense to grant relief from the stay to somebody
9  who doesn't have standing, or at least hasn't established
10 standing.  So that's the conundrum.

11            If it was a relief from stay context and standing
12 was clear, and it was just a matter of some kind of
13 dispute, then it's easy.  You say, okay, to preserve
14 everybody's rights, you put the money in escrow, and if you
15 don't, I grant relief from stay, because you're not
16 adequately protecting the other side.  But when standing is
17 at issue, it doesn't seem appropriate to make somebody put
18 money in escrow or even if it does make sense to put it in
19 escrow, then what do you do if they don't?  Do you grant
20 relief to somebody who doesn't have standing, who hasn't
21 established standing?  So that's an issue that pervades a
22 lot of the work that the Court is doing at this time.  But
23 I have a full calendar and we're not going to resolve that
24 issue probably today.

25            But what do you want me to do as far as

1   scheduling this?

2         MR. VOISENAT: I believe we have a status

3   conference coming up.  Do you know when?

4         MR. HINDS: I don't know when.

5         MR. VOISENAT: Okay.

6         MR. HINDS: Your Honor, I'd have to order this

7   transcript to make sure I respond in a number of the --

8         THE COURT: Sure.  That's fine.  You can get a

9   copy of the CD in 24 hours if you're happy with that.

10        MR. HINDS: All right.

11        THE COURT: If you want to get a transcript, you

12  can do that too.

13        MR. HINDS: My only issue, Your Honor, would be

14  that the people at Natixis and to the extent we need to

15  deal with New Century Mortgage, they're out of our control.

16  We're pretty much at their mercy.  And it took us a long

17  time to get the documents that we --

18        THE COURT: Can't you subpoena them?

19        MR. HINDS: Well, we can, but we're trying to do

20  it cooperatively, and it would take a lot longer by way of

21  subpoena than -- in theory -- by way of cooperation.

22        THE COURT: Whatever you want.  I'll do whatever

23  you want, but we have to continue this injunction.  Tell me

24  what you want and when you want it, and I'll do it.

25        MR. HINDS: Can we reset for 30 days?

1          THE COURT: What's going to happen in 30 days,

2     because I can't get papers at the last second.  You have to

3     find a date that you're going to -- and I suggest you go in

4     the back of the courtroom, go out in the hall -- a date

5     when you're going to file and when he's going to respond,

6     and give me a week after that to come back to me, and I'll

7     try to accommodate your schedule.  But it doesn't make any

8     sense to continue this 30 days if it's going to take you 30

9     days to get the information.  And it's not easy, you're

10    saying, so you let me know what's realistic for you, and

11    I'll do whatever you want.

12         MR. HINDS: Thank you, Your Honor.

13         MR. VOISENAT: Thank you, Your Honor.  We'll just

14    come back when we get some dates?

15         THE COURT: Yeah, yeah, you just come back and sit

16    at the chair, and I'll note that you're here, and when I

17    have a moment, I'll take care of you.

18         MR. HINDS: Thank you.

19         MR. VOISENAT: Thank you.

20    (Whereupon, extraneous matters are heard, and this

21    matter is recalled at 2:58 p.m.)

22         THE COURT: What's the name of your case?

23         MR. HINDS: Caporale.

24         THE COURT: This is No. 4, Caporale versus Saxon.

25    May I have appearances?

1          MR. VOISENAT: Marc Voisenat for the Plaintiffs.

2          MR. HINDS: Your Honor, Desmond Hinds for Saxon

3   and for Deutsche Bank.  Your Honor, at your instruction, we

4   went out and discussed scheduling.  If it's acceptable to

5   the Court, what we decided to do is, I'll go back, talk to

6   my client, find out what a reasonable turnaround would be

7   for the evidence.  Mr. Voisenat would want to consider

8   maybe taking a deposition of the declarant.  We'll build in

9   some time for that, and then we'll report back to your

10  clerk with the scheduling order, hopefully next week.

11         THE COURT: Yeah, fine.  So do you want me to take

12  this off calendar or continue it out?

13         MR. HINDS: I'd like to continue it out

14  temporarily.  I mean --

15         THE COURT: What does temporarily mean?

16         MR. HINDS: It means I don't want to take it off

17  calendar.

18         THE COURT: Yeah, that's fine.  So why don't I

19  just continue it to April 22nd, at 2:15 with the

20  understanding that you can move it forward or backward, but

21  at least it's on calendar.  4-22, at 2:15 and that's

22  scheduling only.

23         MR. VOISENAT: Right.  Thank you, Your Honor.

24         MR. HINDS: Thank you, Your Honor.

25  (Whereupon, the proceedings are concluded at 2:59 p.m.)

1

2

3

4

5                          CERTIFICATE OF TRANSCRIBER

6

7              I certify that the foregoing is a correct

8    transcript from the digital sound recording of the

9    proceedings in the above-entitled matter.

10

11

12   DATED:   February 26, 2010

13                               /s/ Jo McCall

14

15

16

17

18

19

20

21

22

23

24

25