Marc Voisenat (CSB# 170935)
1330 Broadway, Suite 1035
Oakland, Ca. 94612
Tel: (510) 272-9710
Fax: (510) 272-9158

Attorney for Debtors
Richard Souza Caporale
Isabel Ann Caporale

United States Bankruptcy Court

Northern District of California

| | |
|---|---|
| In re:<br>RICHARD SOUZA CAPORALE<br>ISABEL ANN CAPORALE<br><br><br>Debtors.<br><br>RICHARD CAPORALE AND ISABEL CAPORALE<br><br>Plaintiffs,<br><br>vs.<br><br>SAXON MORTGAGE SERVICES INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY, MSAC 2007-NC3 AND DOES 1-10<br><br>Defendants. | Case No.: 07-54109<br><br>Adv. No 09-05050<br><br>.<br><br><br><br><br><br>**RESPONSE TO DEFENDANT'S BRIEF RE: DOCUMENTATION FOR THE TRANSFER OF THE SUBJECT PROMISSORY NOTE AND DEED OF TRUST**<br><br>Date:<br>Time: 2:15 p.m.<br>Room: 3020 |

///

1. **Introduction:**

The original application for injunctive relief alleged that defendants failed to comply with civil code section 2923.5 and did not have authority to foreclose. Those issues have not been decided and plaintiff maintains their position on both issues.

In its most recent filing, defendants again attempt to show that the mortgage loan made to the Caporale's on February 23, 2007 ("Caporale loan") was properly transferred to defendant. However, the documentation supplied by defendants fails to show that Natixis had any interest in the Caporale loan.

2. **Argument:**

   a. **Alleged Transfer from New Century to Nataxis**

According to the Hatzoglou declaration, Natixis purchased a portfolio from New Century Mortgage Corporation pursuant to a Fifth Amended and Restated Master Repurchase Agreement dated November 10, 2006. (Hatzoglou dec ¶5). Natixis purchased a portfolio of approximately 3,500 residential mortgage loans. (Hatzoglou dec ¶5). Mr. Hatzoglou then states that the "Subject Mortgage Loan" was included within the portfolio of the Transferred loans. (Hatzoglou dec ¶5). Mr. Hartzoglou basis this statement on Exhibit E. First, the Caporale loan could not have been included in the original agreement because the Caporale loan did not even exist at the time the Fifth Amended and Restated Master Repurchase Agreement was executed. The Caporale loan did not come into existence until February 23, 2007. It is unlikely that Natixis purchased loans that did not exist.

As this court observed in the previous hearing, the Fifth Amended and Restated Master Repurchase Agreement contemplated future purchases defined collectively in the Fifth Amended and Restated Master Repurchase Agreement as "Transactions". (Exh D 18:7) The term "Transactions" was also included in the definition of "Purchased Asset". (Exh D 14:16-17).

Section 3(b) of the Fifth Amended and Restated Master Repurchase Agreement outlines the 20 conditions precedent to all "Transactions" (Exh D 20:8) . The first requirement is a "Transaction Request" which is defined in section 2. Transaction Request "means a request from the Seller to the Buyer, in the form attached as <u>Exhibit 1</u> … to enter into a Transaction, which may be delivered via Electronic Transmission." (Exh D 18:8-10). Exhibit 1 is part of the Fifth Amended and Restated Master Repurchase Agreement and is a document titled "Form of Transaction Request". This document is supposed to have an attached appendix that lists the loans sought to be purchased by Nataxis. Defendants have shown no evidence that New Century ever requested that Nataxis purchase the Caporale loan. If so, there should be in existence the "Transaction Request" which would show the "Requested Purchase Date" and other information required by the Form of Transaction Request.

The second condition precedent to all Transaction is set forth in section 3(b)(2) which states "no Default or Event of Default shall have occurred and be continuing under the Repurchase Documents" " (Exh D 20:16-17)

Event of Default is defined in section 12 of the Fifth Amended and Restated Master Repurchase Agreement. Under section 12(f), a default includes "an Act of Insolvency shall have occurred with respect of the Guarantor … New Century…" (Exh D 47:8-9). The definition of Act of Insolvency includes the filing of a petition for bankruptcy. (Exh D 2:18-20).

Mr. Hatzoglou's declaration suggests that Nataxis acquired the Caporale loan on April 19, 2007, which is after the April 2, 2007 New Century bankruptcy filing. (Dec ¶5 Exh E 18:7) Since there is no documentation showing when the Caporale loan was purchased by Nataxis, there is no way to tell if the transfer occurred before New Century's bankruptcy filing or after.

Finally, Exhibit E seems to be an isolated document and does not state that that the Caporale loan was part of the transferred loan. Mr. Hatzoglou at a minimum should have attached the Transaction Request and subsequent documentation to establish that the Caporale

loan was part of the Transferred Loans. Defendants have failed to do so in the four months since the previous hearing when the court required defendants to file a supplemental declaration including appropriate documentation. The documentation provided does not even suggest that the Caporale loan was part of the Transferred Loans.

  b. **No Competent Evidence that Nataxis Transferred the Caporale Loan to Morgan Stanley Mortgage Capital Inc.**

Attached as Exhibit F to the declaration of John Hatzoglou is a document entitled "Mortgage Loan Purchase and Interim Servicing Agreement". This document purportedly establishes that Nataxis transferred the Caporale loan to Morgan Stanley. Page 2 of the agreement provides certain definitions including:

"Mortgage Loan: An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the Mortgage Loan Schedule.

Mortgage Loan Documents: The documents pertaining to each Mortgage Loan listed on Exhibit B annexed hereto, excluding any documents identified as unavailable on the exception report to be provided to the Purchaser by the Custodian prior to the Closing Date.

Mortgage Loan Schedule: A schedule of Mortgage Loans annexed hereto as Exhibit A. The data set forth in the Mortgage Loan Schedule was provided to the Seller by New Century, and the Seller does not make any representation or warranty concerning the completeness or accuracy thereof." (Hatzoglou Dec Exh F pg 2)

However, the Exhibit A attached to the agreement entitled "Mortgage Loan Schedule" is blank and there is no indication that the Caporale loan was part of this agreement. Moreover, Mr. Hatzoglous declaration does not affirmatively state that the Caporale loan was included in the agreement between Nataxis and Morgan Stanley.

### c. **Defendants Still Have not Shown They Have Complied with Civil Code §2923.5**

Defendants appear to be operating on the presumption that the Court has found that they have complied with C.C§2923.5. Plaintiff's have declared that they were not contacted by defendants as required by C.C §2923.5. As such, defendants are not allowed to foreclose until they show compliance and record a new notice of default.

In a very recent state court appellate decision, the court addressed the requirements and scope of C.C. §2923.5(b) and the remedy for failure to comply. <u>Mabry v. Superior Court</u>, --- Cal.Rptr.3d ----, 2010 WL 2180530 (Cal.App. 4 Dist., 2010).

Section 2923.5(a) of the Civil Code now provides:

"(1) A mortgagee, trustee, beneficiary, or authorized agent **may not file a notice of default** pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

(2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department

of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically." {Emphasis added}

In this case, plaintiffs have alleged that prior to the recording of the notice of trustee sale, defendants did not contact them or advise them of any of their rights and remedies as required by Civil Code §2923.5(a). Thus, defendants had no right to record their Notice of Trustee Sale.

Since defendants did not comply with CC §2923.5(a), they should be enjoined from foreclosing until such time that they show evidence that they have complied with the statute and file a new notice of default.

Since the Notice of Trustee failed to comply with the mandatory requirement of C.C. §2923.5, it is defective and cannot be the foundation of a valid foreclosure sale. Defendants should be enjoined from foreclosing until such time that they show evidence that they have complied with the statute and file a new notice of default.

### i. **Tender Not Required**

In Mabry, the court also concluded that tender was not required to postpone a foreclosure sale. The Court stated "**The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure prior to a notice of default**. It is enforced by the postponement of a foreclosure sale. Therefore it would defeat the purpose of the statute to require the borrower to tender the full amount of the indebtedness prior to any enforcement of the right to-and that's the point-the right to be contacted prior to the notice of default." {Emphasis added} Id. at 8.

3. **Conclusion**

There is absolutely no evidence that Nataxis ever acquired the Caporale loan or properly foreclosed on the Caporale loan. As a result, defendants have not established that they are

entitled to enforce the underlying promissory note as it appears that the Caporale loan is still part of the bankruptcy estate of New Century Mortgage Corporation.

Moreover, the <u>Mabry</u>, court held that the remedy for non compliance with 2923.5 was a postponement of the foreclosure sale until the lender filed a new notice of default after complying with the requirements of C.C. §2923.5. Thus, if defendants cannot show they substantially complied with C.C. §2923.5 when they recorded their Notice of Trustee on, they must now comply with the statute and if there are no alternatives to foreclosure, defendants must file a new Notice of Default.

Dated: June 16, 2010

/s/ Marc Voisenat
Marc Voisenat, Attorney for Plaintiffs

# PROOF OF SERVICE

I am over the age of 18 and not a party to the within action; my business address is 1330 Broadway, Suite 1035, Oakland, California 94612

On June 16, 2010, I served the foregoing document described as: **RESPONSE TO DEFENDANT'S BRIEF RE: DOCUMENTATION FOR THE TRANSFER OF THE SUBJECT PROMISSORY NOTE AND DEED OF TRUST** on the interested parties via facsimile and by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland addressed as follows:

Desmond J. Hinds, Esq.
11601 Wilshire Blvd., Suite 800
Los Angeles, Ca. 90025

I declare, under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.
Executed on June 16, 2010 at Oakland, California.

/s/ Marc Voisenat
Marc Voisenat, Attorney for Plaintiffs