FILED

JAN 27 2011

United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Richard Souza Caporale and<br>Isabel Souza Caporale,<br><br>    Debtors. | Case No. 07-54109-ASW<br><br>Chapter 7 |
| Richard Souza Caporale and<br>Isabel Souza Caporale,<br><br>    Plaintiffs,<br><br>vs.<br><br>Saxon Mortgage Services, Inc.,<br>Deutsche Bank National Trust<br>Company as Trustee for Morgan<br>Stanley, MSAC 2007-NC3; and<br>Does 1-10,<br><br>    Defendants. | Adv. No. 09-05050 |

**MEMORANDUM DECISION RE ORDER TO SHOW CAUSE
RE PRELIMINARY INJUNCTION ORDER**

Before the court is the request of Debtors Richard and Isabel Caporale (collectively, "Plaintiffs") for a preliminary injunction restraining Defendants Saxon Mortgage Services, Inc. ("Saxon") and Deutsche Bank National Trust Company as trustee for Morgan Stanley ("Deutsche Bank") (collectively, "Defendants") from foreclosing on

Plaintiffs' residence located at 14943 Conway Avenue, San Jose, California ("the Property"). Defendants oppose Plaintiffs' request for a preliminary injunction.

A continued hearing on the request for a preliminary injunction was held on August 25, 2010 and the matter has been submitted for decision. Plaintiffs are represented by Marc Voisenat, Esq. of the Law Offices of Marc Voisenat. Defendants are represented by Desmond J. Hinds, Esq. of Hinshaw & Culbertson LLP.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.

FACTS

On February 23, 2007, Plaintiffs entered into a $930,000 promissory note ("Note") in favor of New Century Mortgage ("New Century"). The note was secured by a deed of trust on the Property and was recorded on March 2, 2007.

On August 11, 2007, Mortgage Electronic Registration Systems ("MERS") -- as nominee for New Century -- transferred New Century's interest in the deed of trust to Saxon. On August 17, 2007, Saxon transferred Saxon's interest in the deed of trust to Deutsche Bank.

On August 20, 2007, Saxon caused a Notice of Default to be recorded asserting that, as of August 17, 2007, Plaintiffs were in default in the amount of $28,369.81. Defendants assert that Plaintiffs have made no payments on the Note since early 2007.

On October 11, 2007, an assignment from MERS, as nominee for New Century assigning the deed of trust to Saxon on August 11,

2007, was recorded. On November 27, 2007, Saxon published a Notice of Trustee's Sale. On December 10, 2007, Plaintiffs filed a Chapter 13 bankruptcy case.

On April 28, 2008, Saxon transferred Saxon's interest in the deed of trust to Deutsche Bank. The assignment from Saxon to Deutsche Bank was recorded on August 26, 2008.

Plaintiffs' bankruptcy case was converted from Chapter 13 to Chapter 7 on August 12, 2008. On December 17, 2008, Plaintiffs received their discharge and Plaintiffs' bankruptcy case was closed.

On February 13, 2009, Defendants published a Notice of Trustee's Sale that set a foreclosure sale for March 2, 2009. Plaintiffs state that, in the Notice of Trustee's Sale, Defendants claim Defendants attempted to contact Plaintiff Richard Caporale on October 27, 2008 while Plaintiffs' bankruptcy case was pending. Plaintiff Richard Caporale denies this statement.

On February 23, 2009, Plaintiffs commenced this adversary proceeding and filed a motion for a temporary restraining order. The temporary restraining order was based on Plaintiffs' assertion that Defendants did not hold the original Note as well as that Defendants had not complied with the requirements of California Civil Code Section 2923.5. At a hearing on February 25, 2009, the Court orally granted a temporary restraining order and set an order to show cause regarding preliminary injunction for March 16, 2009. A written temporary restraining order was entered on March 9, 2009.

On March 12, 2009, the parties stipulated to continue the March 16, 2009 hearing to April 24, 2009. At the April 24, 2009 hearing, the Court extended the period of the injunction through

MEMORANDUM DECISION RE ORDER TO SHOW CAUSE
RE PRELIMINARY INJUNCTION ORDER                3

Case: 09-05050    Doc# 83    Filed: 01/27/11    Entered: 02/02/11 08:09:53    Page 3 of 20

May 29, 2009 and set a further hearing on May 28, 2009. The Court extended the injunction on two bases: (1) it was unclear whether Defendants held the original Note; and (2) Defendants had not complied with the new foreclosure procedures required by California Civil Code Section 2923.5. A written order embodying the oral injunction was entered on May 5, 2009. At the May 28, 2009 hearing, the Court further extended the period of the injunction through August 31, 2009, on the same bases as the April 24, 2009 hearing, and set a further hearing on August 31, 2009. A written order embodying the oral injunction was entered on July 14, 2009.

Despite the injunction from the May 28, 2009 hearing, Defendants foreclosed on the Property on June 3, 2009. Defendants rescinded that sale on July 15, 2009 by recording of a Notice of Rescission.

At the August 31, 2009 hearing, Plaintiffs agreed that Defendants held the original Note. The remaining issue was whether the Note and related deed of trust were transferred properly to Defendants because the Note and related deed of trust were transferred while New Century was in bankruptcy. The Court set a further hearing on October 9, 2009. Whether Defendants had complied with the new foreclosure procedures required pursuant to California Civil Code Section 2923.5 was not addressed. No written order was submitted by the parties or entered.

At the October 9, 2009 hearing, Defendants represented that Defendants identified the paper trail showing that Defendants properly hold the Note and related deed of trust and needed additional time to document that trail. The Court set a further hearing on November 23, 2009. The Court confirmed that whether

Defendants held the original Note was no longer at issue. The Court indicated that once the standing issue was resolved, the Court would address other issues underlying the preliminary injunction, including payments to be made to Defendants because the Court was not going to allow Plaintiffs to reside in the property for free. No written order was submitted by the parties or entered.

Prior to the November 23, 2009 hearing, the parties stipulated to continue the hearing to December 11, 2009. The parties further stipulated to continue the December 11, 2009 hearing to February 12, 2010.

At the February 12, 2010 hearing, the Court noted that the dispute between Plaintiffs and Defendants related to links in the chain of title between New Century and Natixis Real Estate Capital, Inc. ("Natixis"), the successor-in-interest to Ixis Real Estate Capital, Inc. ("Ixis"). Specifically, as of November 11, 2006, New Century entered into a Master Repurchase Agreement ("Repurchase Agreement") with Ixis; however there was no direct statement in the record showing that Natixis is the successor-in-interest to Ixis. In addition, there was no evidence that Plaintiffs' loan was transferred to Natixis under the Repurchase Agreement.

The Court continued the February 12, 2010 hearing to permit Defendants to work with Natixis and New Century in order to establish Defendants' chain of title. The matter was continued to April 22, 2010 for scheduling purposes only. The April 22, 2010 hearing was further continued to June 25, 2010 and eventually to July 9, 2010. The August 25, 2010 hearing was set at the July 9, 2010 hearing.

At the August 25, 2010 hearing, the parties agreed that the only remaining disputed standing issue was with regard to transfer of the loan from New Century to Natixis. The matter was taken under submission at the end of hearing with the Court leaving the preliminary injunction in effect until the Court decides otherwise.

## II.
## APPLICABLE LAW

In order to obtain injunctive relief in the Ninth Circuit, the moving party must show:

> "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Alternatively, a court may grant the injunction if the plaintiff "demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor."
>
> As we have said many times regarding the two alternative formulations of the preliminary injunction test: "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum."

Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005) (emphasis in original) (citations omitted).

## III.
## ANALYSIS

**A.  Standing**

The Court finds that Saxon has standing to foreclose on the Property. There are four links in the transfer of the Note and

related deed of trust to Defendants: (1) from New Century -- the originator of the Note -- to Natixis; (2) from Natixis to Morgan Stanley Mortgage Capital, Inc. ("Purchaser"); (3) from Purchaser to Morgan Stanley ABS Capital I Inc. ("Morgan Stanley"); and (4) from Morgan Stanley to Morgan Stanley ABS Capital I Inc. Trust 2007-NC3 ("Morgan Stanley Trust"), for which Deutsche Bank is the trustee and Saxon is the loan servicer. Plaintiffs dispute that Natixis obtained Plaintiffs' loan from New Century, but Plaintiffs do not dispute any other part of the chain of title. The parties agree that Ixis and Natixis are same entity.

The Repurchase Agreement[1] governs the transfer of Plaintiffs' loan from New Century to Natixis. The Repurchase Agreement is a contract between several related entities, including New Century (collectively "Sellers"), and Natixis. Pursuant to the Repurchase Agreement, Natixis purchased approximately 3,500 residential mortgage loans originated by Sellers or Sellers' affiliates ("Transferred Loans"). The aggregate unpaid principal balance of the Transferred Loans was approximately $799 million. Under the Repurchase Agreement, Sellers agreed to transfer the Transferred Loans and Natixis agreed to fund the Transferred Loans. The Repurchase Agreement process involved three steps: (1) New Century signed the loans; (2) New Century asked Natixis to fund the loans; and (3) the loans were transferred to Natixis. The Repurchase Agreement permitted New Century to fund loans made to individual borrowers, such as Plaintiffs.

---

[1] Exhibit D to the Declaration of John Hatzoglou filed on June 8, 2010 as docket #75.

Based on the evidence filed with the Court and explained at the August 25, 2010 hearing, the Court finds that New Century transferred Plaintiffs' loan to Natixis' predecessor-in-interest, Ixis. On February 28, 2007, Deutsche Bank, as the custodian on behalf of New Century, sent an email to Natixis' predecessor, Ixis, containing loan level data for loans that needed to be funded. Plaintiffs' loan is one of the loans identified in Deutsche Bank's email. Minutes later, Ixis approved the advance of over $71 million to New Century and the loan pool including Plaintiffs' loan was funded by Natixis. There is no formal documentation of the transfer from New Century to Ixis.[2]

Moreover, the loan number identifying Plaintiffs' loan is consistent across several documents filed with the Court. In Exhibit B to the Supplemental Declaration of John Hatzoglou filed June 23, 2010 ("June 23 Exhibit B"), the loan number corresponding to the payee named "Centennial Bank" is #1012313445 with an original balance of $930,000. This is the same loan number found at the bottom of the Note. The same loan (#1012313445) is listed in Exhibit E to the Declaration of John Hatzoglou filed May 13, 2010. Loan #1012313445 is also listed in Exhibit B to the Supplemental Brief of Defendants Following Deposition of John Hatzoglou filed August 13, 2010 ("August 13 Exhibit B"). Moreover, the borrower identified in both the June 23 Exhibit B and the August 13 Exhibit B is Richard Caporale, and the loan amount is approximately $930,000, which is the principal amount of the loan. Finally, as explained in great detail in the Declaration of Gary E.

---

[2] The Court finds this lack of documentation to be surprising, even shocking, given the amount of money and property involved.

Devin filed on August 13, 2010, the reference to "Centennial Bank" on the June 23 Exhibit B is not a mistake because the beneficiary bank for Plaintiffs' loan was Centennial Bank in Englewood, Colorado, not New Century directly.

On March 8, 2007, shortly after Ixis funded the loan pool including Plaintiffs' loan, Ixis notified Sellers of certain events of default under the Repurchase Agreement. On March 26, 2007, Ixis issued a Notice of Disposition informing Sellers that Ixis was selling the Transferred Loans at a public auction with final bids due on April 11, 2007 pursuant to Ixis' rights under the Repurchase Agreement. On April 20, 2007, Natixis sold the Transferred Loans to Purchaser. Purchaser subsequently sold the Plaintiffs' loan to Morgan Stanley and Morgan Stanley subsequently transferred Plaintiffs' loan to Morgan Stanley Trust, for which Deutsche Bank is the trustee and Saxon is the loan servicer.

Based on the foregoing, the Court finds that Defendants have standing to foreclose on the Property. Because Defendants have standing, Plaintiffs have not shown a strong likelihood of success on the merits, and the preliminary injunction should be lifted.

### B. Violation of Stay

Plaintiffs have asserted that Natixis' foreclosure violated the automatic stay because the Note and related deed of trust was transferred while New Century was in bankruptcy. The Court holds that Natixis' foreclosure was proper since, under Bankruptcy Code Section 559 ("Section 559"), there is no stay of repossession with regard to a Repurchase Agreement so Natixis' foreclosure was proper even if conducted while New Century was in bankruptcy.

The April 11, 2007 auction of the transferred loans does not violate the automatic stay in New Century's bankruptcy case, filed in Delaware on April 2, 2007, for two reasons. First, under Sections 7(b) and 9 of the Repurchase Agreement, the transactions were intended to be sales and title to the purchased loans transferred to Natixis and Natixis had free and unrestricted use of the purchased loans. Second, under Section 25(b) of the Repurchase Agreement, either party's right to liquidate the purchased loans delivered in connection with the transactions under the Repurchase Agreement is a right of liquidation under Section 559. Section 559 provides that there is no stay of the contractual right of a repurchase agreement participant to liquidate under a repurchase agreement.

> **The exercise of a contractual right of a repo participant or financial participant to cause the liquidation, termination, or acceleration of a repurchase agreement because of a condition of the kind specified in section 365(e)(1) of this title shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title . . . .** In the event that a repo participant or financial participant liquidates one or more repurchase agreements with a debtor and under the terms of one or more such agreements has agreed to deliver assets subject to repurchase agreements to the debtor, any excess of the market prices received on liquidation of such assets (or if any such assets are not disposed of on the date of liquidation of such repurchase agreements, at the prices available at the time of liquidation of such repurchase agreements from a generally recognized source or the most recent closing bid quotation from such a source) over the sum of the stated repurchase prices and all expenses in connection with the liquidation of such repurchase agreements shall be deemed property of the estate, subject to the available rights of setoff. As used in this section, the term "contractual right" includes a right set forth in a rule or bylaw of a derivatives clearing organization (as defined in the Commodity Exchange Act), a multilateral clearing organization (as defined in the Federal Deposit Insurance Corporation Improvement Act of 1991), a national securities

exchange, a national securities association, a
securities clearing agency, a contract market
designated under the Commodity Exchange Act, a
derivatives transaction execution facility registered
under the Commodity Exchange Act, or a board of trade
(as defined in the Commodity Exchange Act) or in a
resolution of the governing board thereof and a right,
whether or not evidenced in writing, arising under
common law, under law merchant or by reason of normal
business practice.

(Emphasis added). Bankruptcy Code sections 101(46) and 101(47) define a repo participant and a repurchase agreement as:

> In this title the following definitions shall apply:
>
> . . .
>
> (46) The term "repo participant" means an entity that, at any time before the filing of the petition, has an outstanding repurchase agreement with the debtor.
>
> (47) The term "repurchase agreement" (which definition also applies to a reverse repurchase agreement)--
>
>> (A) means--
>>
>>> (i) an agreement, including related terms, which provides for the transfer of one or more certificates of deposit, mortgage related securities (as defined in section 3 of the Securities Exchange Act of 1934), mortgage loans, interests in mortgage related securities or mortgage loans, eligible bankers' acceptances, qualified foreign government securities (defined as a security that is a direct obligation of, or that is fully guaranteed by, the central government of a member of the Organization for Economic Cooperation and Development), or securities that are direct obligations of, or that are fully guaranteed by, the United States or any agency of the United States against the transfer of funds by the transferee of such certificates of deposit, eligible bankers' acceptances, securities, mortgage loans, or interests, with a simultaneous agreement by such transferee to transfer to the transferor thereof certificates of deposit, eligible bankers' acceptance, securities, mortgage loans, or interests of the kind described in this clause, at a date certain not later than 1 year after such transfer or on demand, against the transfer of funds;

(ii) any combination of agreements or transactions referred to in clauses (I) and (iii);

(iii) an option to enter into an agreement or transaction referred to in clause (I) or (ii);

(iv) a master agreement that provides for an agreement or transaction referred to in clause (I), (ii), or (iii), together with all supplements to any such master agreement, without regard to whether such master agreement provides for an agreement or transaction that is not a repurchase agreement under this paragraph, except that such master agreement shall be considered to be a repurchase agreement under this paragraph only with respect to each agreement or transaction under the master agreement that is referred to in clause (I), (ii), or (iii); or

(v) any security agreement or arrangement or other credit enhancement related to any agreement or transaction referred to in clause (I), (ii), (iii), or (iv), including any guarantee or reimbursement obligation by or to a repo participant or financial participant in connection with any agreement or transaction referred to in any such clause, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562 of this title; and

(B) does not include a repurchase obligation under a participation in a commercial mortgage loan.

Based on Bankruptcy Code Sections 559, 101(46) and 101(47), the Court finds that there was no stay preventing Natixis from liquidating the mortgage loans under the Repurchase Agreement post-petition.

### C. Compliance with California Civil Code Section 2924

The Court will lift the preliminary injunction conditioned upon Defendants complying with the new foreclosure procedures required pursuant to California Civil Code Section 2923.5 ("Section 2923.5") prior to foreclosing on the Property.

In light of the high residential property foreclosure rates in California -- which have adversely affected property values in the state and will have deleterious effects on the state and local economies -- the state of California enacted emergency legislation in Section 2923.5. Effective September 6, 2008, Section 2923.5 modified the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure.[3] Section 2923.5 applies to mortgages and deeds of trust recorded from January 1, 2003 to December 31, 2007, inclusive, that are secured by owner-occupied residential real property containing no more than four dwelling units, as is the case here.

Section 2923.5(a) provides that a mortgagee, trustee, beneficiary or authorized agent may not file a notice of default pursuant to California Civil Code Section 2924 ("Section 2924") until 30 days after initial contact with the borrower is made, in person or by telephone, or after due diligence, to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. However, if a notice of default has already been filed prior to September 6, 2008, Section 2923.5(c) provides:

> If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either:
>
> (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure.

---

[3] Section 2923.5 was subsequently amended effective January 1, 2010. All references are to the amended statute.

(2) Lists the efforts made, if any, to contact the borrower in the event no contact was made.

Here, Saxon recorded a Notice of Default on Plaintiffs' residence on August 20, 2007. This Notice of Default was filed prior to the date that Section 2923.5 took effect. A Notice of Trustee's Sale was published on November 26, 2007, and a foreclosure sale was scheduled for December 11, 2007. The trustee's sale was postponed by the filing of Plaintiffs' bankruptcy case on December 10, 2007.

Section 2924g(c)(2) provides that if the sale proceedings are postponed for a period or periods totaling more than 365 days, a new notice of sale in the manner prescribed in Section 2924f must be given before scheduling further sale proceedings. Here, Plaintiffs were discharged on December 17, 2008 and Plaintiffs' bankruptcy case was closed on the same day. Relief from the automatic stay was never granted with respect to Plaintiffs' residence. As a result, the sale proceedings against Plaintiffs' residence were postponed for a period of more than 365 days and require a new notice of sale in the manner prescribed in Section 2924f, and subject to the requirement of Section 2923.5(c).

On February 13, 2009, Defendants published a Notice of Trustee's Sale with a foreclosure sale set for March 2, 2009. Plaintiffs state that, in the Notice of Trustee's Sale, Defendants claim Defendants attempted to contact Richard Caporale on October 27, 2008 while Plaintiffs' bankruptcy case was pending. Plaintiffs deny this statement. Plaintiffs also assert that the call notes are insufficient to meet the Section 2329.5 standards because that law requires a declaration. This Court agrees.

Section 2923.5(c) requires a declaration from Defendants stating that Plaintiffs were contacted to assess Plaintiffs' financial situation and to explore options for Plaintiffs to avoid foreclosure. Even if Defendants, in fact, attempted to contact Plaintiffs prior to filing the Notice of Trustee's Sale, this one attempt was not enough to satisfy the new requirements of Section 2923.5. Defendants state only that they "attempted" to contact Plaintiffs on October 27, 2008 and **not** that Defendants actually contacted Plaintiffs. If no contact was made, Section 2923.5(c)(2) requires Defendants list the efforts made -- if any -- to contact Plaintiffs. The record in this Court does not reflect that any additional efforts were made to contact Plaintiffs. Filing a Notice of Trustee's Sale after only one attempt at contacting Plaintiffs does not fit within the legislative intent of Section 2923.5, which was enacted to promote early contact and communications between beneficiaries and specified borrowers to explore options that could avoid unnecessary foreclosure.

Section 2923.5(a)(2) provides:

> A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

If, however, contact with the borrower could not be made, Section 2923.5(g) provides a "due diligence" requirement for a mortgagee, trustee, beneficiary or authorized agent to meet regarding contact with the borrower.

Section 2923.5(g) defines "due diligence" to mean that (1) a mortgagee, trustee, beneficiary or authorized agent shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by the Department of Housing and Urban Development ("HUD") to find a HUD-certified housing counseling agency; and (2) after such letter has been sent, the mortgagee, trustee, beneficiary or authorized agent shall attempt to contact the borrower by telephone at least three times, at different hours, and on different days. Defendants only allege that Defendants attempted contact Plaintiffs only once, on October 27, 2008, and Plaintiffs contest that allegation. However, even if Defendants' allegation was factually correct, Defendants cannot be said to have exercised due diligence, within the meaning of Section 2923.5(g), in attempting to contact Plaintiffs.

Section 2923.5(g) goes on to state that the mortgagee, trustee, beneficiary or authorized agent satisfies the telephone contact requirements if it determines, after attempting contact as discussed previously, that the borrower's primary and secondary telephone numbers or numbers on file, if any, have been disconnected. There is nothing before this Court to show Plaintiffs' telephone number or numbers have been disconnected.

Section 2923.5(g) further provides that if the borrower does not respond within two weeks after the telephone call requirements have been satisfied, the mortgagee, trustee, beneficiary or

authorized agent shall then send a certified letter with return receipt requested. Again, there are no facts presently before this Court that show Defendants complied with attempting to contact Plaintiffs by telephone at least three times at different hours and on different days, or that Defendants sent Plaintiffs a certified letter with return receipt requested.

The legislative intent of Section 2923.5 is to require beneficiaries, such as Defendants, to exercise due diligence to contact specified borrowers -- such as Plaintiffs -- before filing a notice of default *as well as* before filing a notice of sale when a notice of default was recorded prior to the enactment of this legislation. Such a reading fits with the legislative intent of requiring early contact and communications between beneficiaries and borrowers to explore options that could avoid unnecessary foreclosure, and advances the goal of preventing more foreclosures that would add to the glut of foreclosed properties already on the market.

D. **Notice of Rescission Argument**

Plaintiffs now contend that -- even if Defendants did not previously need to meet the requirements of Section 2923.5 -- because Defendants filed a Notice of Rescission on July 15, 2009, rescinding the foreclosure sale conducted on June 3, 2009, Defendants now have to comply with the provisions of Section 2923.5 prior to recording a new notice of default. Plaintiffs base this argument on the following language of Section 2923.5(c):

> If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section **and did not subsequently file a notice of rescission**, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the

> notice of sale filed pursuant to Section 2924f, include a declaration that either:
>
> (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure.
>
> (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made.

(Emphasis added.) Plaintiffs' reading of Section 2923.5 would impose additional restrictions not otherwise required under California law.

There are multiple instances in which a notice of rescission can be filed in the non-judicial foreclosure process. Under Section 2924c(a)(2), a notice of rescission of a notice of default is to be filed within 21 days of a reinstatement of the loan. Likewise, a foreclosing party can rescind a notice of trustee's sale. However, rescinding a trustee's sale does not rescind the underlying notice of default and does not require the foreclosing party to file a new notice of default. There is nothing in Section 2923.5 that indicates that the notice of rescission referred to in Section 2923.5(c) includes a notice of rescission of a trustee's sale, and there is no indication that Section 2923.5(c) is intended to change California law to invalidate a notice of default when only a notice of rescission of a trustee's sale is filed, although Plaintiffs' reading of Section 2923.5 would require such a result.

The Notice of Rescission recorded by Defendants on July 15, 2009 rescinded the trustee's sale and purported trustee's deed upon sale dated June 3, 2009 and recorded on June 5, 2009. The Notice of Rescission **did not** rescind the Notice of Default and this Court will not construe Section 2923.5(c) to so provide.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is denied. Defendants have standing to foreclose on the Property and there was no stay preventing Natixis from liquidating the mortgage loans under the Repurchase Agreement. Because sale proceedings against Plaintiffs' residence have been postponed for more than 365 days, a new notice of sale if required. The Court lifts the preliminary injunction conditioned upon the requirement that Defendants must record a new notice of sale as well as comply with all of the requirements of Section 2923.5 prior to recording a new notice of sale. Counsel for Plaintiffs shall prepare a form of order consistent with this ruling and shall submit the proposed order to the Court after serving counsel for Defendants.

Dated: 1/27/11

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

Court Service List

Office of the U.S. Trustee
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

Richard Souza Caporale
14943 Conway Avenue
San Jose, CA 95124

Isabel Ann Caporale
14943 Conway Avenue
San Jose, CA 95124

Marc Voisenat, Esq.
Law Offices of Marc Voisenat
1330 Broadway #1035
Oakland, CA 94612

Desmond J. Hinds, Esq.
Law Office of Hinshaw and Culbertson
11601 Wilshire Blvd. #800
Los Angeles, CA 90025